# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JAMES WAYNE KIMBROUGH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 3:09-0678 |
| ) | Judge Trauger |
| ROLAND COLSON, WARDEN, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

## I. INTRODUCTION
## AND
## BACKGROUND

The petitioner is a prisoner in the Whiteville Correctional Facility in Whiteville, Tennessee. He brings this *pro se* action under 28 U.S.C. § 2254, seeking federal *habeas corpus* relief. The petitioner names Warden Roland Colson as the respondent.[1]

The Davidson County Grand Jury returned a four-count superseding indictment against the petitioner: 1) Count 1 – first-degree murder of his wife, Jennifer Carol Kimbrough, during the perpetration of, or attempt to perpetrate, spousal rape in violation of Tenn. Code Ann. § 39-13-202(a)(2); Count 2 – first-degree premeditated murder of his wife in violation of Tenn. Code Ann. § 39-13-202(a)(1); Counts 3 and 4 – spousal rape in violation of Tenn. Code Ann. § 39-13-507(b). (Add. 1, Vol. 2, pp. 0247-0252)[2] The State sought the death penalty. (Add. 1, Vol. 1, pp. 0019-0020)

The petitioner was tried by a jury and found guilty on all counts. (Add. 2, Vol. 3, pp. 0422, 0435-0436; Add. 6, Vol. 12, pp. 998, 1000) His conviction for premeditated murder was merged

---

[1] Warden Colson is the Warden at the DeBerry Special Needs Facility in Nashville, where the petitioner was incarcerated at the time he initially brought this action.

[2] The Addenda were filed with Docket Entry No. 12.

with his felony murder conviction. (Add. 2, Vol. 3, p. 0422; Add. 6, Vol. 12, p. 1001)

In the capital sentencing phase, the jury sentenced the petitioner to life imprisonment without possibility of parole. (Add. 2, Vol. 3, pp. 0422-0425; Add. 5, Vol. 11, 1250)[3] The petitioner also received a fifteen-year sentence at forty-five percent on each of the two spousal rape charges, to be served concurrently with one another, but consecutively with his sentence for murder. (Add. 2, Vol. 3, pp. 0435-0436; Add. 7, Vol. 14, p. 1277)

The Tennessee Court of Criminal Appeals (Court of Criminal Appeals) affirmed the judgment of the trial court, and the Tennessee Supreme Court denied his application for permission to appeal. (Add. 8, Docs. 3, 6) The petitioner did not file a petition for a writ of *certiorari* in the United States Supreme Court.

The petitioner filed a timely petition for state post-conviction relief. (Add. 9, pp. 0009-0129) The petitioner's request for state post-conviction relief was denied following an evidentiary hearing (Add. 9, pp. 0250-0295), the Court of Criminal Appeals affirmed the judgment of the post-conviction court (Add. 10, Doc. 4), and the Tennessee Supreme Court denied his application for permission to appeal (Add. 10, Doc. 7). Once again, the petitioner did not file a petition for a writ of *certiorari* in the United States Supreme Court.

The petitioner raises the following grounds for relief in this action: 1) the Court of Criminal Appeals erred in determining that his "warrantless arrest" was constitutional; 2) the Court of Criminal Appeals erred in affirming the judgment of the post-conviction court on the issue of whether the State solicited perjured testimony at trial; and 3) the Court of Criminal Appeals erred in affirming the judgment of the post-conviction court on his ineffective assistance of counsel claim. (Docket Entry No. 1, ¶ 12, pp. 6-10) The respondent has filed a response in which he urges the court

---

[3] The later pages in the trial transcript were assembled out of order by the court recorder.

to deny the petition and dismiss the action. (Docket Entry No. 11) The petitioner has not replied.

## II. ANALYSIS

Title 28 U.S.C. § 2254, as amended by the AEDPA, provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "unreasonable application" of clearly established federal law differs from an "incorrect application." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). Under the former, "a federal *habeas corpus* court may grant relief if the state court identifies the governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. The latter clause is satisfied when a state court "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law or . . . decides a case differently than the Court . . . on a set of materially indistinguishable facts." *Id*. at 364-65.

Where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-el v. Cockrell*, 537 U.S. 322, 324 (2003). The purpose of federal *habeas corpus* review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial. *Bell v. Cone*, 535 U.S. 685, 693 (2002).

3

### A. Whether the Court of Criminal Appeals Erred in Upholding the Trial Court's Ruling that the Petitioner's Warrantless Arrest for Murder was Constitutional

The petitioner alleges that the Court of Criminal Appeals erred in affirming the trial court's ruling that the circumstances of his warrantless arrest passed constitutional muster. (Docket Entry No. 1, ¶ 12 Ground One, pp. 6-7) It cannot be determined from the pleadings whether the petitioner's claim is that his convictions were unconstitutional because his arrest violated the Fourth Amendment, or that the evidence obtained pursuant to his arrest was used against him improperly at trial. (Docket Entry No. 1, Attach. Memo., Ground 1) Owing to this ambiguity, the court liberally construes the petition to allege both. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982)(federal courts are required to liberally construe *pro se* pleadings).

#### 1. Constitutionality of the Petitioner's Arrest

Without more, an illegal arrest standing alone does not constitute grounds for federal *habeas corpus* relief. *See United States v. Crews*, 445 U.S. 463, 474 (1980)(an unlawful arrest is not a defense to a valid conviction). Therefore, this construction of the petitioner's first ground for relief is without merit.[4]

### Certificate of Appealability

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a COA will not issue with respect to this construction

---

[4] A review of the record also reveals that this construction of the petitioner's first ground for relief is procedurally defaulted for purposes of federal *habeas corpus* review.

of the petitioner's first ground for relief.

## 2. Trial Court's Decision not to Suppress all Evidence

Under *Stone v. Powell*, 428 U.S. 465 (1976), when "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal *habeas corpus* relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494.

The record shows that this issue was addressed by the trial court in the hearing on the petitioner's motion to suppress on November 29, 2001. (Add. 7, Vol. 14, Attach. Transcript) The petitioner's motion to suppress was granted in part and denied in part (Add. 2, Vol. 3, pp. 0317-0364), the trial court concluding in the process that there was probable cause to arrest the petitioner (Add. 2, Vol. 3, pp. 0332-0335). The Court of Criminal Appeals concurred in the trial court's determination on the issue. (Add. 8, Doc. 3, pp. 5-17)

The record is clear that this construction of the petitioner's first ground for relief was fully and fairly litigated in the state court. Consequently, this claim is not cognizable in federal *habeas corpus*. *See Seymour v. Walker*, 224 F.3d 542, 553 (citing *Stone*, 428 U.S. at 465).

## Certificate of Appealability

The petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a COA will not issue regarding this construction of the petitioner's first ground for relief.

### B. Whether the Court of Criminal Appeals Erred on Post-Conviction in Upholding the Post-Conviction Court's Order Denying Relief Based on the Petitioner's Claim that the State Solicited Perjured Testimony

The petitioner alleges that the Court of Criminal Appeals erred in affirming the post-conviction court's determination that the State did not knowingly solicit perjured testimony at trial. (Docket Entry No. 1, ¶ 12, Ground Two, pp. 8-9; Attach. Memo., Ground 2) Although the petition

5

and supporting memorandum appear to focus on the alleged actions of David Carrell, the lead Metro detective in the murder investigation, there is sufficient ambiguity in the pleadings that the court liberally construes this claim to include the alleged conspiracy on the part of other police officers, the prosecution, and the Tennessee Bureau of Investigation (TBI) to fabricate and tamper with the evidence used to convict him. (Add. 10, Doc. 1) Although the petitioner does not specify the constitutional grounds on which he seeks relief, the court further liberally construes the petition to allege that these actions violated his right to due process under the Fourteenth Amendment.

To be entitled to federal *habeas corpus* relief on his claim that the State solicited perjured testimony, the petitioner must show that the prosecution "knowingly" used perjured testimony and that the evidence was "material." *See King v. Trippett*, 192 F.3d 517, 522-23 (6th Cir. 1992); *Burks v. Egeler*, 512 F.2d 221, 229 (6th Cir. 1955), *cert. denied*, 423 U.S. 937 (1976). To be entitled to federal *habeas corpus* relief on the theory that the State used false evidence other than testimonial evidence to obtain a conviction, the petitioner must, once again, establish that the prosecution used false evidence knowingly and that the evidence was material. *Naupe v. Illinois*, 360 U.S. 264, 269 (1959). Finally, to be entitled to federal *habeas corpus* relief on the grounds that his conviction was obtained using evidence that was planted, manufactured, or altered by law enforcement officials, the petitioner must show that the prosecution used the evidence "knowing" that it had been planted, manufactured, or altered. *Burks*, 512 F.2d at 229.

The petitioner raised this issue in his post-conviction petition (Add. 9, pp. 0049-0093), and the post-conviction evidentiary hearing was devoted exclusively to these claims[5] (Docket Entry No. 1, Attach. Section 8). The post-conviction court addressed these claims at length in its Order denying the petitioner's request for post-conviction relief (Add. 9, pp. 0273-0286), finding that each

---

[5] The respondent neglected to submit a copy of the transcript of the evidence from the post-conviction evidentiary hearing. However, the petitioner has provided one. (Docket Entry No. 1, Attach. Section 8)

6

of the factual predicates underlying this claim was without merit.

The Court of Criminal Appeals determined the following regarding this claim on appeal from the judgment of the post-conviction court:

> [T]he petitioner's allegations revolve around a conspiracy theory that the police fabricated and planted evidence against him. The petitioner did not present any proof of the alleged conspiracy other than his own testimony. All of the police officers testified that they were not involved in fabricating evidence against the petitioner, and his trial counsel testified that they discovered no evidence of such a conspiracy. Further, counsel testified that they did not pursue a defense of a conspiracy theory because they thought the petitioner would look delusional and dangerous to the jury, a situation they did not want in a death penalty case.

(Add. 10, Doc. 4, p. 8)

A plain reading of the copy of the transcript of the post-conviction hearing provided by the petitioner establishes that post-conviction counsel introduced thirty-nine (39) exhibits into evidence at the evidentiary hearing, none of which provided proof of the petitioner's conspiracy theory on its face. A plain reading of the petitioner's testimony at the post-conviction evidentiary hearing also reveals that the petitioner's conspiracy theory was based solely on speculation and supposition. (Docket Entry No. 1, Attach. Section 8, pp. 10-163)

Richard McGee, lead defense attorney at the time of trial, and Wendy Tucker, second chair, testified at the post-conviction evidentiary hearing that they investigated the petitioner's conspiracy theory but were unable to find any proof that the evidence had been tampered with or fabricated. (Docket Entry No. 1, Attach. Section 8, pp. 180-183, 187-188, 201, 203, 206, 418, 420-423, 426-427, 431, 437, 440, 449-452) Brian Holmgren and Katrin Miller, the assistant district attorneys who prosecuted the case, denied any knowledge of tampering with or fabricating evidence. (Docket Entry No. 1, Attach. Section 8, pp. 316-317, 355)

Former Metro Detective Carrell, retired Metro Police Sergeant Johnny Hunter, Metro Police

7

Officer William Merryman, and Metro Police Officer Tim Matthews all testified at the post-conviction evidentiary hearing that they did not fabricate or tamper with any evidence, nor did they have knowledge of anyone who did. (Docket Entry No. 1, Attach. Section 8, pp. 237, 257, 269,281) John Wicker, a TBI evidence technician at the time of the investigation in the petitioner's case, and Michael Turbeville the Quality Assurance Director for the TBI Laboratory, both offered testimony that evidence was not fabricated, planted, or tampered with while it was in the TBI's custody. (Docket Entry No. 1, Attach. Section 8, pp. 365, 400-408)

Retired Metro Police Officer Charles Blackwood and Doctor Bruce Levy, M.D., the Chief Medical Examiner for the State of Tennessee and Medical Examiner for the County of Davidson, also testified at the post-conviction evidentiary hearing. (Docket Entry No. 1, Attach. Section 8, pp. 167-174, 324-344) Their testimony did not provide any proof that evidence had been fabricated or planted.

The record is devoid of any poof that former detective Carrell perjured himself at trial. There also is no proof whatsoever in the record that evidence used to convict the petitioner was planted, manufactured, and/or altered by anyone involved in the investigation. Finally, even if it could be proved that former detective Carrell perjured himself, and/or that someone planted, manufactured, or altered the evidence used to convict the petitioner, there is not a scrap of proof in the record that the State knowingly used either.

The petitioner has not established that the decision of the state courts on this issue was contrary to, or involved an unreasonable application of, clearly established federal law. Neither has he shown that those decisions were based on an unreasonable determination of the facts in light of the evidence presented. Therefore, this claim is without merit.

### Certificate of Appealability

The petitioner has not made a substantial showing of the denial of a constitutional right.

Therefore, a COA will not issue on this claim.

### C. Whether Defense Counsel Provided Ineffective Assistance of Counsel

The petitioner alleges that the Court of Criminal Appeals erred in affirming the judgment of the post-conviction court on the issue of ineffective assistance of counsel. (Docket Entry No. 1, ¶ 12, Ground Three, pp. 9-10; Attach. Memo.) The crux of the petitioner's argument is that defense counsel did not challenge former detective Carrell's allegedly perjured testimony, nor did they present proof that the evidence against him had been planted, manufactured, and/or altered by the prosecution and/or state law enforcement officials. (Add. 9, pp. 0106-0129)

The post-conviction court addressed this claim at length in its order denying the petitioner's request for post-conviction relief. (Add. 9, pp. 0288-0294) The post-conviction court concluded that defense counsels' actions were made for "reasonable and well informed" tactical reasons, that there was no evidence of deficient representation, and that the petitioner was not prejudiced by defense counsels' actions. The Court of Criminal Appeals concurred. (Add. 10, Doc. 4, p. 8)

To prevail on a claim of ineffective assistance of counsel, the petitioner must show deficient performance and prejudice to the defendant. *See Bell*, 535 U.S. at 694-95. Trial counsel's performance is deficient when it falls below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984); *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000). In assessing performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Finally, a court hearing an ineffective assistance of counsel claim must consider the totality of the evidence. *Id*. at 695. "The determinative issue is not whether petitioner's counsel

9

was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996)(quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)(*en banc*), *cert. denied*, 508 U.S. 975 (1993)).

Richard McGee, lead defense counsel, and Wendy Tucker, second chair, gave the following reasons for not pursuing the petitioner's conspiracy theory. (Docket Entry No. 1, Attach. Section 8, pp. 175-208, 414-455) First, as previously discussed, *supra* at p. 10, both testified that they investigated the petitioner's claims, but found no evidence to support them. Second, to pursue the petitioner's claims further would likely have resulted in generating additional evidence against him. (Docket Entry No. 1, Section 8, pp. 185-186, 196-197) Third, defense counsel did not want the petitioner to testify concerning the alleged evidence manipulation, because it would have revealed his criminal history, appeared as though he were trying to "put one over" on the jury, shown him as "delusional," and possibly caused him to lose his composure, which he was prone to do. (Docket Entry No. 1, Section 8, pp. 188, 190-192, 199-200, 423-424, 451-452) The record shows that defense counsels' actions were based on sound strategic/tactical considerations, that their representation was not deficient, and that the petitioner was not prejudiced.

The petitioner has not established that the decision of the state courts on this issue was contrary to, or involved an unreasonable application of, clearly established Federal law, nor has he shown that the state courts' decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, this claim is without merit.

### Certificate of Appealability

The petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a COA will not issue on this claim.

### III. CONCLUSION

For the reasons explained herein, the petition will be denied, this action dismissed, and a

10

COA will not issue as to any of the claims. Because an appeal from the judgment of the court would not be taken in good faith, the petitioner will not be certified to appeal the judgment of the court in forma pauperis.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge